O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ALAN MICHAEL SOSA ALARCON,

Petitioner,

v.

MARK BOWEN et al.,

Respondents.

Case No.: 5:26-cv-00204-MEMF-DFM

**ORDER GRANTING IN PART PETITIONER'S SECOND MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION [DKT. NO. 31]**

Before the Court is the second Motion for Temporary Restraining Order and Preliminary Injunction filed by Petitioner Alan Michael Sosa Alarcon. Dkt. No. 31 ("Motion"). For the reasons stated below, the Motion is GRANTED IN PART. The Court grants the Temporary Restraining Order and orders the parties to show cause as to why a preliminary injunction should not issue.

/ / /

/ / /

/ / /

/ / /

1

I.    **Background**

A. **Factual Background**[1]

Petitioner Alan Michael Sosa Alarcon was born in Mexico on April 13, 1979. Dkt. No. 30-1 at 3 ("Petition"). When he was seven or eight years old, he entered the United States with his parents. *Id.* In 1995, his parents separated when his mother moved to Texas. *Id.* Petitioner remained in California in his father's legal custody. *Id.* His parents ultimately divorced in 1995. *Id.*

Petitioner's father became a naturalized U.S. citizen on December 15, 1995. *Id.* At the time, Petitioner was sixteen years old. *Id.* One year later, at age seventeen, Petitioner applied to adjust his immigration status to become a lawful permanent resident. *Id.* On June 1, 1998, Petitioner's application was approved, and he became a lawful permanent resident. *Id.* He was nineteen years old. *Id.*

On approximately March 7, 2025, ICE detained Petitioner on the basis that he was an "illegal immigrant." *Id.* Since that time, for over one year, Petitioner has been in ICE custody at the Adelanto Detention Center. *Id.* He has not received a bond hearing. *Id.*

B. **Procedural History**

On January 16, 2026, Petitioner filed his Petition for Writ of Habeas Corpus. *See* Dkt. No. 1. On March 26, 2026, Petitioner filed the operative amended Petition. *See* Petition. The Petition states two grounds for relief. First, it contends that Petitioner is a U.S. citizen by operation of law, so ICE's detention of him exceeds its statutory authority. *See id.* at 5–8. And second, it contends that— regardless of whether Petitioner is a U.S. citizen—his detention is unlawful because of its excessive length and because he has not been afforded a bond hearing. *See id.* at 9–11.

On March 12, 2026, Petitioner filed the instant Motion. This Court concluded that the earlier filed request for a temporary restraining order was mooted by the Motion's filing, and it set a briefing schedule on the Motion. *See* Dkt. No. 33. On March 20, 2026, Respondents filed an Opposition. *See* Dkt. No. 34 ("Opp."). On March 24, 2026, Petitioner filed a Reply. *See* Dkt. No. 35 ("Reply").

---

[1] The following factual background, unless stated otherwise, recounts the facts alleged in the amended Petition for Writ of Habeas Corpus. Dkt. No. 36 ("Petition"). The Court makes no finding as to their truth at this time.

The Court found this matter appropriate for resolution without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

## II.    Applicable Law

### A.  Preliminary Injunctions

The analysis that courts must perform for temporary restraining orders and preliminary injunctions is "substantially identical." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,* 240 F.3d 832, 839 (9th Cir. 2001). Federal Rule of Civil Procedure 65 sets forth the procedure for issuance of a preliminary injunction. *See* Fed. R. Civ. P. 65(b). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To qualify for injunctive relief, Plaintiff must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood that he will suffer irreparable harm without an injunction; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id.* at 20. This Court cannot grant the preliminary injunction "unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

The Ninth Circuit has held that injunctive relief may issue, even if the moving party cannot show a likelihood of success on the merits, if "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Under either formulation of the principles, preliminary injunctive relief should be denied if the probability of success on the merits is low. *See Martin v. Int'l Olympic Comm.*, 740 F.2d 670, 675 (9th Cir. 1984) ("[E]ven if the balance of hardships tips decidedly in favor of the moving party, it must be shown as an irreducible minimum that there is a fair chance of success on the merits.").

### B.  Habeas Petitions in the Immigration Detention Context

District Courts are "generally prohibit[ed]" from "entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out" certain provisions of the INA, found in 8 U.S.C. §§ 1221–1232. *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022). But "lower courts retain the authority to 'enjoin or restrain the operation of'

the relevant statutory provisions 'with respect to the Motion of such provisions to an individual [noncitizen] against whom proceedings under such part have been initiated.' *Id.* (quoting 8 U.S.C. § 1252(f)(1)).[2] This Court, therefore, may grant relief in "individual cases." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481–82 (1999).

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court established that courts should treat a six-month period of detention as "presumptively reasonable." *Id.* at 700–01. It explained:

> After this 6–month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Respondents must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every [noncitizen] not removed must be released after six months. To the contrary, a [noncitizen] may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.* at 701. In other words, trial courts considering an immigration detainee's habeas petition seeking release must first ascertain if the detainee has demonstrated good reason to believe that, in the reasonably foreseeable future, there is no significant likelihood of removal. Only then does the burden shift to the Respondents to rebut that showing.

### III.    Discussion

As discussed above, the standard for granting a temporary restraining order and a preliminary injunction are substantively identical. Given the urgency of this matter, this Court has only considered whether Petitioner is entitled to a temporary restraining order. Having determined below that he is entitled to a temporary restraining order, the Court will issue an order to show cause as to why a preliminary injunction should not issue, which may permit further development of the record and additional briefing.

The Petition advances two grounds that the TRO briefing discusses at fuller length. First, Petitioner argues that his detention in ICE custody is per se unlawful because he is a U.S. citizen. *See* Petition at 5–9. Second, regardless of whether this Court finds that Petitioner is a U.S. citizen,

---

[2] Where it does not change the meaning, this Court endeavors to use the term "noncitizen" in place of alien, consistent with the practice of the United States Supreme Court. *See Avilez v. Garland*, 69 F.4th 525, 527 (9th Cir. 2023)

Petitioner argues that his prolonged detention in ICE custody violates his due process protections. *See id.* at 9–11. The Opposition disputes both grounds.

The Court applies the *Winter* factors to Petitioner's Motion below. For the reasons below, this Court finds that—regardless of whether Petitioner is a citizen[3]—he has sufficiently shown that he is likely to succeed on his claim challenging his detention as unconstitutional, so he is entitled to a temporary restraining order.

### A.  The first *Winter* factor, likelihood of success on the merits, is met.

Petitioner argues that he is entitled to a release order because the Government has detained him for an unconstitutionally long period of time, and because he has not received a bond hearing. He argues that he is therefore entitled to relief under the Due Process Clause. *See generally* Petition; Motion.[4] For the reasons below, the first *Winter* factor is met.

Due process claims have two elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections. *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998). As this Court explains below, Petitioner is likely to succeed in demonstrating that both elements exist here.

As to the first element, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690. This Court finds, and Respondents do not contest, that Petitioner will likely prevail in demonstrating that his interest in remaining out of custody was a protected liberty interest under the Fifth Amendment. This is particularly true given that the "indefinite detention" of a noncitizen who has been "admitted to the United States but subsequently ordered removed," which the Government maintains is Petitioner's status, "would raise serious constitutional concerns." *Id.* at

---

[3] Because of the limited, expedited briefing on this topic—and this Court's interest in affording Petitioner immediate relief—this Court does not reach the question of whether Petitioner is likely to prevail on his citizenship claim.

[4] Respondents' Opposition appears to suggest that Petitioner has shown "serious questions going to the merits." Opp. at 4 (quoting *All. for the Wild Rockies*, 632 F.3d at 1134–35).

682. To that end, immigration detention in excess of six months is presumptively unconstitutional. *Id.* at 701.

Here, Petitioner maintains, and the Government concedes, that Petitioner's detention has now exceeded one year. Motion at 3; Opp. at 2. And Petitioner has provided "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. The Government posits that Petitioner is removable as a noncitizen with a final removal order. Opp. at 3–4. But, as the Petition explains, Petitioner is in withholding-only proceedings in immigration court, which are pending appeal before the Board of Immigration Appeals. Petition at 9. Petitioner could then appeal that decision to the Ninth Circuit. *Id.* And Respondents appear to concede that that appeal remains pending. Opp. at 2. So Petitioner has made a sufficient showing to shift the burden to the Government. *Zadvydas*, 533 U.S. at 701. But Respondents have not rebutted that showing with any argument that Petitioner is likely to be removed in the reasonably foreseeable future. They do not address this standard at all—so they appear to concede that Petitioner's foreseeable removal is unlikely.[5] Based on this, Petitioner has shown he has been deprived of a constitutionally protected liberty interest, and the first due process claim element is met.

The second element is also met. Petitioner is likely to prevail in establishing that his detention's length and the Government's failure to give Petitioner a bond hearing effectively deprived him of his due process rights. "The fundamental requirement of due process is the

---

[5] Respondents do argue, in apparent opposition to Petitioner's showing of a likelihood of success, that DHS enjoys discretion to "arrest and detain an [noncitizen] 'pending a decision on whether the [noncitizen] is to be removed from the United States." Opp. at 5 (quoting 8 U.S.C. § 1226(a)). To that end, Respondents reason, they are "broadly authorized to exercise [their] discretion to revoke release." *Id.* But this is not at issue. None of this refutes Petitioner's argument that the *method* through which the Government is detaining him violates his due process rights.

Nor is Respondents' authority on this point persuasive. *Moran v. Department of Homeland Security*, No. 20-696, 2020 WL 6083445 (Aug. 21, 2020), is wholly distinguishable: The portion quoted by Respondents was addressing claims under the APA and the Declaratory Judgment Act. *Id.* at *9. And there, the Court found that petitioners had simply failed to point to authorities supporting their contention that they had protected liberty interests in remaining out of custody despite having pending removal orders. *Id.* Here, in contrast, Petitioner's reference to *Zadvydas* establishes his protected liberty interest: He has an interest in being free from unconstitutional immigration detention for an indeterminate length of time and absent due process. The petitioners in *Moran* did not appear to reference *Zadvydas* at all. And, in any event, most of the *Moran* petitioners had been detained for less than six months. *See id.* at *1–*2.

opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). And Petitioner alleges he was given no opportunity to be heard at all. Petition at 3; Motion at 3. Respondents' Opposition does not dispute that Petitioner has not received a bond hearing over the course of his one-year detention, nor does it make a showing that he has received any other meaningful opportunity to be heard. To that end, he will likely prevail on the second factor.

For these reasons, Petitioner has sufficiently demonstrated that he will likely prevail in his challenge to his detention.

> i. The second *Winter* factor, a demonstrated likelihood of irreparable harm absent an injunction, is met.

To establish the second *Winter* requirement, Petitioner must demonstrate a likelihood that he will suffer irreparable harm without a temporary restraining order. Respondents do not address this factor, nor do they argue that Petitioner has failed to make the requisite showing. This Court finds that the second *Winter* requirement is met.

As a threshold matter, Petitioner has "established a likelihood of irreparable harm by virtue of the fact that [he is] likely to be unconstitutionally detained for an indeterminate period of time." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). And "it is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Moreover, Petitioner ongoing detention of indeterminate length inherently risks him irreparable harm, as it is not clear when (if at all) he will be processed, released, or removed. Thus, as this Court has already found that Petitioner will likely prevail on the merits of his constitutional challenges to his current detention, the second *Winter* factor is met.

> ii. The third and fourth *Winter* factors, balancing the equities and considering the public interest, are met.

When, as here, the nonmoving party is a governmental entity, the last two *Winter* factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). This Court thus considers the third and fourth factors—whether the "balance of equities" is in Petitioner's favor and whether an injunction is in the public interest—jointly. *All. for the Wild Rockies*, 632 F.3d at 1135.

The balance of equities appears to tilt in Petitioner's favor. It is true, as the Opposition points out, that the Government has a strong interest in the enforcement of federal immigration law. *See* Opp. at 4–5. But the Government "cannot reasonably assert that it is harmed in any legally cognizable sense" by being compelled to follow the law. *Zepeda v. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983). Put another way, the Government's explanation of its general interest in immigration enforcement does not outweigh this individual Petitioner's demonstrated hardships. To that end, "[a]ny additional administrative costs to the government are far outweighed by the considerable harm to plaintiffs' constitutional rights in the absence of the injunction." *Hernandez*, 872 F.3d at 996. "Faced with such a conflict between [the minimal cost to implement additional due process safeguards] and preventable human suffering," this Court finds ample reason to conclude that "the balance of hardships tips decidedly in plaintiffs' favor." *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983). This is particularly true given that Respondents do not argue otherwise, nor do they allege that the issuance of a TRO in this matter would cause them harm at all. And, for related reasons, an injunction is in the public interest. "Public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution." *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005). Respondents do not contend that this Court should find otherwise. In sum, the third and fourth *Winter* factors are met here.

## IV.    Conclusion

For the foregoing reasons, the Motion is GRANTED IN PART. Petitioner's request for a temporary restraining order is GRANTED. This Court will rule on the request for a preliminary injunction following the Order to Show Cause hearing described below.

1. Respondents are ORDERED to release Petitioner from custody (and return to him his personal belongings) within forty-eight (48) hours,[6] and not to redetain him absent compliance with his due process rights;

---

[6] This Court understands, based on Respondents' representations from hearings in similar immigration habeas cases, that Respondents believe that forty-eight hours is a reasonable amount of time to effectuate release.

2. Respondents are enjoined from relocating Petitioner outside of the Central District of California pending final resolution of this matter;

3. Respondents shall not impose any release restrictions on Petitioner, such as electronic monitoring, unless deemed necessary at a future pre-deprivation bond hearing.[7]

4. This Court orders Respondents to show cause, in writing, as to why a preliminary injunction should not issue.

   a. Respondents' brief is due on Thursday, April 2, 2026. Petitioner may file a response brief by Monday, April 6, 2026.

   b. The parties may stipulate to a different briefing schedule via joint stipulation filed on Thursday, April 2, 2026. Should the parties wish to extend either briefing deadline, the parties should also stipulate that this temporary restraining order may remain in effect (without converting to a preliminary injunction) through this Court's decision on the preliminary injunction.

   c. The parties' briefing on the preliminary injunction should address whether the granting of this TRO renders the PI request, and the habeas petition itself, moot.

5. The parties shall meet and confer and file a joint status report regarding the Respondents' compliance with this Order by Thursday, April 2, 2026.

IT IS SO ORDERED.

Dated: March 31, 2026

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge

---

[7] Restraints not shared by members of the public render an individual in custody within the meaning of 28 U.S.C. § 2241. *See Hensley v. Municipal Court, San Jose Milpitas Judicial Dist.*, 411 U.S. 345, 351 (1973) (holding that a person is in custody if the person "is subject to restraints 'not shared by the public generally'" and the person's "freedom of movement rests in the hands of state judicial officers"); *Jones v. Cunningham*, 371 U.S. 236, 238–39 (1963) ("[The] chief use of habeas corpus has been to seek the release of persons held in actual, physical custody in prison or jail. Yet English courts have long recognized the writ as a proper remedy even though the restraint is something less than close physical confinement"). As such, prospective release restrictions (such as electronic monitoring) constitute liberty constraints which do not afford petitioners complete relief.